FILED ORIGINAL

06 JUN 12 PM 3: 37

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH (68581)
DARREN J. ROBBINS (168593)
TRAVIS E. DOWNS III (148274)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
billl@lerachlaw.com
darrenr@lerachlaw.com
travisd@lerachlaw.com

E-filing

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN JOSE DIVISION

PVT

| | |
|---|---|
| NECA-IBEW PENSION FUND (THE DECATUR PLAN), Derivatively on Behalf of ZORAN CORPORATION, | C 06 3742 |
| Plaintiff, | No. |
| vs. | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND STATE LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, CONSTRUCTIVE FRAUD, CORPORATE WASTE, UNJUST ENRICHMENT, GROSS MISMANAGEMENT, ACTION FOR ACCOUNTING AND VIOLATION OF CALIFORNIA CORPORATIONS CODE |
| UZIA GALIL, LEVY GERZBERG, KARL SCHNEIDER, ISAAC SHENBERG, RAYMOND A. BURGESS, JAMES D. MEINDL, JAMES B. OWENS, JR., DAVID RYNNE, ARTHUR B. STABENOW, PHILIP M. YOUNG, | |
| Defendants, | |
| – and – | |
| ZORAN CORPORATION, a Delaware corporation, | |
| Nominal Defendant. | DEMAND FOR JURY TRIAL |

1

## NATURE OF THE ACTION

2      1.      This is a shareholder derivative action brought by a shareholder of Zoran Corporation

3  ("Zoran" or the "Company") on behalf of the Company against its entire Board of Directors and

4  certain current officers and former top officers and/or directors (collectively, "Defendants"). This

5  action seeks to remedy Defendants' violations of federal and state law, including breaches of

6  fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross

7  mismanagement, arising out of a scheme and wrongful course of business whereby Defendants

8  allowed senior Zoran insiders to divert hundreds of millions of dollars of corporate assets to

9  themselves via the manipulation of grant dates associated with hundreds of thousands of stock

10  options granted to Zoran insiders. Each of the Defendants also participated in the concealment of the

11  backdating option scheme complained of herein and/or refused to take advantage of the Company's

12  legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained

13  incentive compensation and proceeds diverted to them since 1998.

14      2.      Between July 1998 and September 2001, Defendants also caused Zoran to file false

15  and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy

16  Statements filed with the SEC which stated that the options granted by Zoran carried with them an

17  exercise price that was not less than the fair market value of Zoran stock on the date of grant and

18  issuance.

19      3.      In fact, Defendants were aware that the practices employed by the Board allowed the

20  stock option grants to be backdated to dates when the Company's shares were trading at or near the

21  lowest price for that relevant period. By 2001, Defendants' backdating scheme had yielded stock

22  option grants to the Company's executive officers worth millions of dollars. These grants were

23  included in more than $37.5 million in stock sale proceeds for Defendants.

24      4.      Zoran's financial results as reported and filed with the SEC were false. Defendants'

25  misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934

26  (the "Exchange Act"), as well as California and Delaware law. By authorizing and/or acquiescing in

27  the stock option backdating scheme, Defendants: (i) caused Zoran to issue false statements; (ii)

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 1 -

1    diverted hundreds of millions of dollars of corporate assets to senior Zoran executives; and (iii)

2    subjected Zoran to potential liability from regulators, including the SEC and the IRS.

3         5.       Defendants' gross mismanagement and malfeasance over the past decade has exposed

4    Zoran and its senior executives to criminal and civil liability for issuing false and misleading

5    financial statements. Specifically, defendants caused or allowed Zoran to issue statements that failed

6    to disclose or misstated the following: (i) that the Company had problems with its internal controls

7    that prevented it from issuing accurate financial reports and projections; (ii) that because of

8    improperly recorded stock-based compensation expenses, the Company's financial results violated

9    Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public

10    disclosures presented an inflated view of Zoran's earnings and earnings per share.

11         6.       Defendants' malfeasance and mismanagement during the relevant period has wreaked

12    hundreds of millions of dollars of damages on Zoran. The Company's senior executives were

13    incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced

14    stock options and to issue false financial statements to cover up their misdeeds. Defendants'

15    breaches of fiduciary duties in the administration of the Company's stock option plans so polluted

16    the plans with grant date manipulations so as to void all grants made pursuant to the plans. The

17    Company has now been mentioned as one of several companies likely to have manipulated options.

18    Meanwhile, certain of the Defendants, who received under-priced stock options and/or knew

19    material non-public information regarding Zoran's internal control problems, abused their fiduciary

20    relationship with the Company by selling over $37.5 million worth of their personally held shares at

21    artificially inflated prices during the relevant period. This action seeks recovery for Zoran against

22    these faithless fiduciaries, as Zoran's Board of Directors, as currently composed, is simply unable or

23    unwilling to do so.

24                            **INTRADISTRICT ASSIGNMENT**

25         7.       A substantial part of the events or omissions which give rise to the claims in this

26    action occurred in the county of Santa Clara, and as such this action is properly assigned to the San

27    Jose division of this Court.

28

1

## JURISDICTION AND VENUE

2   8.   The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange Act,

3   15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated

4   thereunder, and under California and Delaware law for breach of fiduciary duty, abuse of control,

5   constructive fraud, corporate waste, unjust enrichment and gross mismanagement.   In connection

6   with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly,

7   used the means and instrumentalities of interstate commerce, the United States mail and the facilities

8   of a national securities market.

9   9.   This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

10  U.S.C. §78aa, as well as 28 U.S.C. §§1331 and 1337. This Court also has supplemental jurisdiction

11  over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

12  10.   This action is not a collusive one to confer jurisdiction on a court of the United States

13  which it would not otherwise have.

14  11.   Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa,

15  as well as 28 U.S.C. §1391(b).   Many of the acts charged herein, including the preparation and

16  dissemination of materially false and misleading information, occurred in substantial part in this

17  District.   Zoran is located in and conducts its business in this District.   Further, Defendants conduct

18  business in this District, and certain of the Defendants are citizens of California and reside in this

19  District.

20

## PARTIES

21  12.   Plaintiff NECA-IBEW Pension Fund (The Decatur Plan) is, and at all relevant times

22  was, a shareholder of Zoran.

23  13.   (a)   Nominal party Zoran is a Delaware corporation with its principal executive

24  offices located at 1390 Kifer Road, Sunnyvale, California.   Zoran develops and markets integrated

25  circuits, integrated circuit cores and embedded software used by original equipment manufacturers in

26  digital video and audio products for commercial and consumer markets. The Company also provides

27  complete, copy-ready system reference designs based on its technology that help its customers

28  produce commercial and consumer products more quickly and cost-effectively.

1    (b)    Although incorporated under Delaware law, the Company has few, if any,

2  assets, employees, plants and/or offices located in Delaware.  By contrast, Zoran maintains its

3  corporate headquarters in California at 1390 Kifer Road, Sunnyvale, California, and employees

4  hundreds of employees within the State of California.  The Company also maintains more assets,

5  offices, plants and other facilities in California than in Delaware.  Additionally, thousands of the

6  Company's shareholders reside in California, where all of the misconduct challenged in this

7  Complaint, including the false statements, emanated from.

8    14.    Defendant Uzia Galil ("Galil") was a co-founder of the Company in 1981 and had

9  served as President from 1981 to 1984 and as Executive Vice President and Chief Technical Officer

10  from 1985 to 1988.  Galil has served as Chairman of the Board of Directors since 1983.  Galil served

11  on the Audit and Compensation Committees of the Zoran Board.  The Compensation Committee

12  approved the award of stock options by Zoran employees and officers between FY 1998-2002 and

13  actively participated in the management of Zoran's daily business affairs and finances.  The Audit

14  Committee approved Zoran's false financial statements and financial results between FY 1998-2005.

15  He actively participated in the preparation, review and approval of Zoran's publicly reported

16  financial results and financial statements for FY 1998-2005, as well as the corresponding reports on

17  SEC Form 10-K and press releases.  Galil caused these documents to be disseminated by Zoran in

18  California to Zoran shareholders located in California (and elsewhere) and to the SEC.

19    15.    Defendant Levy Gerzberg ("Gerzberg") was a co-founder of the Company in 1981

20  and has served as the Company's President and Chief Executive since December 1988 and as a

21  director since 1981.  Gerzberg actively participated in the preparation, review and approval of

22  Zoran's publicly reported financial results and financial statements for FY 1998-2005, as well as the

23  corresponding reports on SEC Form 10-K and press releases.  Gerzberg caused these documents to

24  be disseminated by Zoran in California to Zoran shareholders located in California (and elsewhere)

25  and to the SEC.  Based on his knowledge of material non-public information regarding the

26  Company, defendant Gerzberg violated Cal. Corp. Code §§25402 and 25502.5 by selling 1,030,687

27

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 4 -

1  Zoran shares for insider trading proceeds of more than $24.9 million. These sales were unusual in

2  both their timing and amount.

3       16.    Defendant Karl Schneider  ("Schneider") joined the Company as Corporate

4  Controller in January 1998 and as Vice President, Finance and Chief Financial Officer in July 1998.

5  Schneider actively participated in the preparation, review and approval of Zoran's publicly reported

6  financial results and financial statements for FY 1998-2005, as well as the corresponding reports on

7  SEC Form 10-K and press releases. Schneider caused these documents to be disseminated by Zoran

8  in California to Zoran shareholders located in California (and elsewhere) and to the SEC. Based on

9  his knowledge of material non-public information regarding the Company, defendant Schneider

10 violated Cal. Corp. Code §§25402 and 25502.5 by selling 178,865 Zoran shares for insider trading

11 proceeds of more than $4.9 million. These sales were unusual in both their timing and amount.

12

13      17.    Defendant Isaac Shenberg ("Shenberg") has served as Senior Vice President,

14 Business and Strategic Development of Zoran since October 1998 and previously as Vice President,

15 Sales and Marketing from January 1995 through October 1998. Shenberg actively participated in the

16 preparation, review and approval of Zoran's publicly reported financial results and financial

17 statements for FY 1998-2005, as well as the corresponding reports on SEC Form 10-K and press

18 releases. Shenberg caused these documents to be disseminated by Zoran in California to Zoran

19 shareholders located in California (and elsewhere) and to the SEC. Based on his knowledge of

20 material non-public information regarding the Company, defendant Shenberg violated Cal. Corp.

21 Code §§25402 and 25502.5 by selling 244,878 Zoran shares for insider trading proceeds of more

22 than $5.06 million. These sales were unusual in both their timing and amount.

23

24      18.    Defendant Raymond A. Burgess ("Burgess") has been a director of the Company

25 since 2005.

26

27

28

19.     Defendant James A. Meindl ("Meindl") has been a director of the Company since 1986. At all relevant times, Meindl served on the Audit Committee of the Zoran Board. The Audit Committee approved Zoran's false financial statements and financial results between FY 1998-2005. Meindl actively participated in the preparation, review and approval of Zoran's publicly reported financial results, as well as the corresponding reports on SEC Form 10-K and press releases. Meindl caused these documents to be disseminated by Zoran in California to Zoran shareholders located in California (and elsewhere) and to the SEC.  Based on his knowledge of material non-public information regarding the Company, defendant Meindl violated Cal. Corp. Code §§25402 and 25502.5 by selling 50,949 Zoran shares for insider trading proceeds of more than $1.2 million. These sales were unusual in both their timing and amount.

20.     Defendant James B. Owens, Jr. ("Owens") has served as a director of the Company since May 2003.  Owens currently serves on the Compensation and Nominating and Corporate Governance Committees of the Zoran Board.

21.     Defendant David Rynne ("Rynne") has served as a director of the Company since 2003.

22.     Defendant Arthur B. Stabenow ("Stabenow") has served as a director of the Company since November 1990 and has been principally engaged as a private investor since January 1999. At all relevant times, Stabenow served on the Audit, Compensation and Nominating and Corporate Governance Committees of the Zoran Board. The Compensation Committee approved the award of stock options by Zoran employees and officers between FY 1998-2005 and actively participated in the management of Zoran's daily business affairs and finances.  The Audit Committee approved Zoran's false financial statements and financial results between FY 1998-2005.  Stabenow actively participated in the preparation, review and approval of Zoran's publicly reported financial results and financial statements, as well as the corresponding reports on SEC Form 10-K and press releases.

1  Stabenow caused these documents to be disseminated by Zoran in California to Zoran shareholders

2  located in California (and elsewhere) and to the SEC. Based on his knowledge of material non-

3  public information regarding the Company, defendant Stabenow violated Cal. Corp. Code §§25402

4  and 25502.5 by selling 43,749 Zoran shares for insider trading proceeds of more than $1.33 million.

5  These sales were unusual in both their timing and amount.

6

7        23.   Defendant Philip M. Young ("Young") has been a director of the Company since

8  1986. Young currently serves on the Nominating and Corporate Governance Committee of the

9  Zoran Board. The Nominating and Corporate Governance Committee is responsible for identifying

10  and considering qualified candidates for appointment and nomination to the Zoran Board and

11  recommending corporate governance principles, codes of conduct and compliance mechanisms, and

12  evaluation of the Board for the Company. Young actively participated in the preparation, review and

13  approval of Zoran's publicly reported financial results for FY 1998-2005, as well as the

14  corresponding reports on SEC Form 10-K and press releases. Young caused these documents to be

15

16  disseminated by Zoran in California to Zoran shareholders located in California (and elsewhere) and

17  to the SEC. By reason of his Board membership and ownership of Zoran stock, Young was a

18  controlling person of Zoran and had the power and influence, and exercised the same, to cause Zoran

19  to engage in the conduct detailed with particularity herein.

20

21        24.   The defendants identified in ¶¶14-15 and 18-23 are referred to herein as the "Director

22  Defendants." The defendants identified in ¶¶15-17 are referred to herein as the "Officer

23  Defendants." The defendants identified in ¶¶15-17, 19 and 22 are referred to herein as the "Insider

24  Selling Defendants."

25                 **DEFENDANTS' DUTIES**

26        25.   Each of the Defendants owed the Company the duty to exercise a high degree of due

27  care, loyalty and good faith in the performance of their individual responsibilities with respect to the

28  management and administration of the affairs of Zoran, as well as the duty of full and candid

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS   - 7 -

disclosure of all material facts related thereto. In addition, under applicable law, these Defendants owed to Zoran the duty to exercise care that public statements regarding the Company and its business and finances were accurate, complete and truthful and not in any way materially misleading. The conduct of Zoran's officers and directors who illegally engaged in insider trading in violation of Cal. Corp. Code §§25402 and 25502.5 has been ratified by Zoran's Board, which failed to take action against them.

26.     To discharge their duties, Defendants were required to exercise reasonable and prudent supervision over the management and financial affairs of Zoran. By virtue of this obligation, these Defendants were required, among other things:

(a)     to, in good faith, manage, conduct, supervise and direct the business and affairs of Zoran carefully and in good faith in accordance with state and federal laws and regulations and the articles and by-laws of Zoran;

(b)     to exercise reasonable control and supervision over the officers and employees of Zoran;

(c)     to exercise reasonable care and good faith in evaluation of the prudence and soundness of policies and practices proposed to be undertaken by Zoran;

(d)     to ensure that Zoran did not engage in unsafe, imprudent or unsound practices and that Zoran complied with all applicable laws and regulations;

(e)     to establish guidelines and policies adequately governing the structure and organization of the Company's operations;

(f)     to establish guidelines and policies adequately governing Zoran's accounting practices;

(g)     to neither violate nor knowingly permit any officer, director or employee of Zoran to violate Cal. Corp. Code §§25402 and 25502.5;

1    (h)     to maintain a proper division of authority and responsibility among the

2    officers and directors of Zoran so as to prevent the dominance of any officer or director in the

3    conduct of the business and affairs of Zoran;

4    (i)     to ensure that Zoran did not engage in unsafe, imprudent or unsound practices

5    and to become and remain informed as to how Zoran was, in fact, operating;

6    (j)     to maintain and implement an adequate and functioning system of internal

7    financial and accounting controls and management information systems, such that Zoran's assets

8    would be safeguarded, its financial statements and information would be accurately recorded and

9    reported, and corporate managers would be given prompt notice of serious problems or divergences

10   so that risk to the corporation would be minimized; and

11   (k)     to supervise the preparation and filing of financial results and financial

12   statements required by law from Zoran, including the Company's Reports on Form 10-K, and to

13   examine and evaluate any reports of examination, audits, or other information required by law

14   concerning the financial condition of Zoran and to make full and accurate disclosure of all material

15   facts concerning, among other things, each of the subjects and duties set forth above.

16       27.     As officers, directors and/or controlling persons of a publicly held company whose

17   common stock was, at all relevant times, registered with the SEC, Defendants had a duty to promptly

18   disseminate accurate and truthful information with respect to the Company's publicly reported

19   financial results and financial statements, products, management, earnings, and present and future

20   business prospects, to correct any previously issued statements from any source that had become

21

22   untrue, and to disclose any trends that would materially affect earnings and the present and future

23   financial operating results of Zoran, so that the market price of the Company's stock would be based

24   upon truthful and accurate information.

25       28.     At all relevant times, Defendants occupied positions with Zoran or were associated

26   with the Company in such a manner as to make them privy to confidential proprietary information

27   concerning Zoran, its operations, finances, financial condition, products and present and future

28

1   business prospects. Because of these positions and such access, each of these Defendants knew or

2   recklessly disregarded that the adverse facts specified herein had not been disclosed to and were

3   being concealed from the public.

4       29.     Notwithstanding their duty to refrain from trading in Zoran stock while in the

5   possession of material, adverse, non-public information concerning Zoran, Zoran's top insiders, with

6   Defendants' knowledge or approval, sold more than 1.5 million shares of Zoran stock at artificially

7   inflated prices for proceeds of almost $38 million, in direct violation of Cal. Corp. Code §§25402

8   and 25502.5.

9

10                 **AIDING AND ABETTING AND CONCERTED ACTION**

11      30.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in

12  the pursuit of a common course of conduct and acted in concert with one another in furtherance of

13  their common plan.

14      31.     During all times relevant hereto, Defendants collectively and individually initiated a

15  course of conduct which was designed to and did: (i) conceal the fact that the Company was

16  allowing its directors and senior officers to divert hundreds of millions of dollars to Zoran insiders

17  and directors and causing Zoran to misrepresent its financial results; (ii) maintain Defendants'

18  executive and directorial positions at Zoran and the profits, power and prestige which Defendants

19  enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of

20  Zoran, regarding Defendants' compensation practices and Zoran's financial performance.

21      32.     The purpose and effect of Defendants' common course of conduct was, among other

22  things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross

23  mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning

24  the Company's operation and financial condition and to artificially inflate the price of Zoran

25  common stock so they could dispose of millions of dollars of their own Zoran shares, and enhance

26  their executive and directorial positions and receive the substantial compensation they obtained as a

27  result thereof.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 10 -

1      33.    Defendants accomplished their common enterprise and/or common course of conduct

2   by causing the Company to purposefully and/or recklessly engage in the option backdating scheme

3   alleged herein and misrepresent Zoran's financial results.  Each of the Defendants was a direct,

4   necessary, and substantial participant in the common enterprise and/or common course of conduct

5   complained of herein.

6      34.    Each of the Defendants aided and abetted and rendered substantial assistance in the

7   wrongs complained of herein.  In taking such actions to substantially assist the commission of the

8   wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary

9   wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

10  overall contribution to and furtherance of the wrongdoing.

11                                    **BACKGROUND**

12     35.    Zoran develops and markets integrated circuits, integrated circuit cores and embedded

13  software used by original equipment manufacturers in digital video and audio products for

14  commercial and consumer markets.  The Company also provides complete, copy-ready system

15  reference designs based on its technology that help its customers produce commercial and consumer

16  products more quickly and cost-effectively.  The Company's integrated circuit cores are used in a

17  variety of products, including digital versatile disc players and recorders and digital cameras.

18     36.    A stock option can give the holder the right to buy stock at a certain price in the

19  future.  Typically, companies set that price at the same time their directors approve an option grant,

20  with an exercise price – also known as the strike price – usually set at the closing price of the stock

21  that day, the closing price of the night before or by computing an average of the high and low prices

22  on the day of the vote.  By manipulating the grant dates, Zoran was able to provide executives and

23  employees with the lowest possible exercise price.  The lower the exercise price, the worse off Zoran

24  was because it would receive less cash for the option purchased.  However, such manipulation would

25  allow the director, officer or other employee to increase the amount he would pocket by a

26  commensurate amount.  So, as insiders, Defendants were motivated to "cherry pick" the dates on

27  which the prices would be set.

28

1

## THE STOCK OPTION GRANTS

2    37.    Certain of Zoran's manipulative stock option grants are described below (not adjusted

3  for stock splits):

4  **1998 Option Grants**

5    38.    Defendants dated many of Zoran's 1998 option grants for top officer as of August 4,

6  1998, at $5.94 per share, near the low for the month. The stock traded between $5.87 and $8.12 per

7  share during August 1998. Defendants Gerzberg and Shenberg and former officers Paul Goldberg,

8  Aharon Aharon and Alex Sinar received 231,166, 55,000, 55,000, 110,000 and 40,000 options,

9  respectively, at $5.94 per share. This was ten days after the Company's stock had fallen from above

10  $9 per share and two days before it would reach $7 per share.

11  **1999 Option Grants**

12    39.    Defendants dated all of Zoran's 1999 option grants for top officers as of August 4,

13  1999, at $20.38 per share – the low of the month. The stock traded as high as $33.50 per share

14  during the month. Defendants Gerzberg, Shenberg and Schneider and former officers Goldberg and

15  Aharon received 55,000, 20,000, 15,000, 15,000 and 30,000 options, respectively, at this price.

16  Once again, the timing of the grant date defies mere coincidence. Two days prior to the grant, the

17  stock was at $23.00 per share and two days after the grant the stock was at $24.56 per share.

18  **2000 Option Grants**

19    40.    Defendants dated all of Zoran's 2000 option grants to top officers at $41.00 per share

20  on July 28, 2000, the lowest price of the month. The stock, which had been about $60.00 per share

21  just prior to the grant would be above $44.13 the day after the grant. Defendants Gerzberg,

22  Shenberg and Schneider and former officer Aharon received 90,000, 40,000, 30,000 and 50,000

23  options, respectively, with the exercise price of $41.00 per share on July 28, 2000.

24    41.    Below are several of Zoran's grants which occurred right before significant stock

25  price increases (adjusted for stock split):

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 13 -







SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

- 14 -

42.     Complicating matters and magnifying the harm to Zoran, during the relevant period, Zoran's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated. They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

43.     Specifically, in many instances the reported dates Zoran stock options were granted differed from the dates on which the options appear to have been actually granted. The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. *In almost every case of misdating, the price of Zoran shares on the reported option-grant date was lower than the share price on the actual day the options were issued.*

44.     Through their fiduciary duties of care, good faith and loyalty, the Defendants owed to Zoran a duty to ensure that the Company's financial reporting fairly presented, in all material respects, the operations and financial condition of the Company. In order to adequately carry out these duties, it is necessary for the Defendants to know and understand the material non-public information to be either disclosed or omitted from the Company's public statements. This material non-public information included the problems Zoran faced because of its deficient internal controls. Furthermore, defendants Galil, Meindl and Stabenow, as members of the Audit Committee during the relevant period, had a special duty to know and understand this material information as set out in the Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in conjunction with management, the Company's policies generally with respect to the Company's earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies. Defendants Gerzberg, Schneider and Shenberg, as officers of Zoran, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, the Director

1  Defendants had ample opportunity to discuss this material information with fellow directors at any

2  of the scores of Board meetings that occurred during the relevant period as well as at committee

3  meetings of the Board.  Despite these duties, Defendants negligently, recklessly, and/or intentionally

4  caused or allowed, by their actions or inactions, the misleading statements to be disseminated by

5  Zoran to the investing public and the Company's shareholders during the relevant period.

6        45.     Specifically, since 1997, Defendants have caused Zoran to report false and misleading

7  fiscal and quarterly financial results which materially understated its compensation expenses and

8  thus overstated its earnings as follows (adjusted for splits):

| FISCAL YEAR | REPORTED EARNINGS (LOSS) | REPORTED BASIC EARNINGS (LOSS)-PER-SHARE FROM CONTINUING OPERATIONS |
|---|---|---|
| 1997 | $4.23M | $0.25 |
| 1998 | $0.93M | $0.05 |
| 1999 | $6.66M | $0.36 |
| 2000 | $(20.61M) | $0.45 |
| 2001 | $(36.07M) | $0.26 |
| 2002 | 5.70M | $0.68 |
| 2003 | $(67.98M) | $0.46 |
| 2004 | $(47.35M) | $0.39 |
| 2005 | $(26.97M) | $0.62 |

      46.     Meanwhile, Defendants were causing the Company to grant them millions of stock

options, many of which were misdated.

      47.     Moreover, throughout the relevant period certain Defendants exercised many of these

stock options permitting them to sell over $37.5 million worth of Zoran stock they obtained often by

cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| GERZBERG | 1/3/97 – 4/27/06 | 1,030,687 | $24,924,281 |
| SHENBERG | 5/21/96 – 4/28/06 | 244,878 | $5,062,454 |
| MEINDL | 2/7/00 – 10/31/05 | 50,949 | $1,260,505 |
| SCHNEIDER | 11/4/98 – 5/1/06 | 178,865 | $4,980,121 |
| STABENOW | 8/12/97 – 2/16/00 | 43,749 | $1,332,275 |
| TOTAL | | 1,549,128 | $37,559,636 |

      48.     On May 16, 2006, the CFRA identified Zoran as one of the companies considered to

be "at risk for having backdated option grants."

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 16 -

49.     On May 23, 2006, in a response to the allegations in the CFRA report, the Company issued a press release entitled "Zoran Corporation Responds to Report Regarding Option Grants." The press release stated in part:

> Zoran Corporation responded today to a report by the Center for Financial Research and Analysis ("CFRA") that identified Zoran as one of 17% of the companies in a survey conducted by CFRA that they considered to be "at risk for having backdated option grants." The CFRA report, which was issued on May 16, 2006, uses statistical data and draws inferences based on the timing of stock option grants to officers. The report cited three specific sets of Zoran option grants, in August 1998, August 1999 and September 2001.
>
> Upon learning of the CFRA report, the Company referred the matter to the Audit Committee of its Board of Directors for review. Under the direction of the Audit Committee, the Company's management, assisted by outside counsel, conducted an internal compliance review and concluded that each of the option grants identified by the CFRA report had been properly made at a regularly-scheduled meeting of the Board of Directors or its Compensation Committee and that none of these grants had involved any "backdating." Management has also conducted a broader review of all other option grants made to the Company's officers since Zoran's initial public offering in 1995 and has reported to the Audit Committee that, in the opinion of management, all such grants have also been properly made. Management's conclusion with respect to these additional option grants is still under review by counsel and the Audit Committee.

50.     In effect, between August 1998 and September 2001, defendants caused Zoran shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial results. These financial results misrepresented and omitted to disclose that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and that because of improperly recorded stock-based compensation expenses the Company's publicly reported financial statements and results presented an inflated view of Zoran's earnings and EPS.

51.     In the wake of these disclosures, Zoran's stock price traded at depressed levels.

52.     Worse yet, the members of Zoran's Board of Directors refuse to take any remedial actions against their fellow Board members and business allies responsible for the improper reporting of the Company's stock-based compensation since 1998, although many of these same Defendants pocketed $37.5 million in unlawful insider trading proceeds, by bailing out of their own Zoran stock while it traded at prices artificially inflated by Defendants' false statements about Zoran's financial results.

1          **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

2          53.     Plaintiff brings this action derivatively in the right and for the benefit of Zoran to

3   redress injuries suffered and to be suffered by Zoran as a direct result of Defendants' violations of

4   state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross

5   mismanagement and waste of corporate assets, as well as the aiding and abetting thereof, by the

6   Defendants.

7          54.     Plaintiff will adequately and fairly represent the interests of Zoran and its

8   shareholders in enforcing and prosecuting its rights.

9          55.     Plaintiff is an owner of Zoran stock and was an owner of Zoran stock during times

10  relevant to Defendants' illegal and wrongful course of conduct alleged herein.

11         56.     Based upon the facts set forth throughout this Complaint, a pre-filing demand upon

12  the Zoran Board of Directors to institute this action against the officers and members of the Zoran

13  Board of Directors is excused as futile.  A pre-filing demand would be a useless and futile act

14  because:

15                 (a)     The members of Zoran's Board have demonstrated their unwillingness and/or

16  inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their

17  fellow directors and allies in the top ranks of the corporation for the violations of law complained of

18  herein.  These are people they have developed professional relationships with, who are their friends

19  and with whom they have entangling financial alliances, interests and dependencies, and therefore,

20  they are not able to and will not vigorously prosecute any such action.

21                 (b)     The Zoran Board of Directors and senior management participated in,

22  approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to

23  conceal or disguise those wrongs from Zoran's stockholders or recklessly and/or consciously

24  negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.

25  As a result of their access to and review of internal corporate documents, conversations and

26  connections with other corporate officers, employees, and directors, and attendance at management

27  and/or Board meetings, each of the Defendants knew the adverse non-public information regarding

28  the improper stock option grants and financial reporting.  Pursuant to their specific duties as Board

1  members, Defendants are charged with the management of the Company and to conduct its business

2  affairs.  Defendants breached the fiduciary duties that they owed to Zoran in that they failed to

3  prevent and correct the improper stock option granting and financial reporting. Certain directors are

4  also dominated and controlled by the other Defendants and cannot act independently of them. Thus,

5  the Zoran Board cannot exercise independent objective judgment in deciding whether to bring this

6  action or whether to vigorously prosecute this action because each of its members participated

7  personally in the wrongdoing or are dependent upon other Defendants who did.

8          (c)    The acts complained of constitute violations of the fiduciary duties owed by

9  Zoran's officers and directors and these acts are incapable of ratification.

10          (d)    The members of Zoran's Board have benefited, and will continue to benefit,

11  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

12  control and the perquisites derived thereof, and are incapable of exercising independent objective

13  judgment in deciding whether to bring this action.

14          (e)    Zoran has been and will continue to be exposed to significant losses due to the

15  wrongdoing complained of herein, yet Zoran's Board has not filed any lawsuits against Defendants

16  or others who were responsible for that wrongful conduct to attempt to recover for Zoran any part of

17  the damages Zoran suffered and will suffer thereby.

18          (f)    Zoran's directors would have to sue themselves and the other Defendants,

19  requiring them to expose themselves and their comrades to millions of dollars in civil liability and/or

20  sanctions.  This they will not do.

21          (g)    Zoran's current and past officers and directors are protected against personal

22  liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

23  Complaint by directors' and officers' liability insurance which they caused the Company to purchase

24  for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Zoran.

25  However, due to certain changes in the language of directors' and officers' liability insurance

26  policies in the past few years, the directors' and officers' liability insurance policies covering the

27  Defendants in this case contain provisions which eliminate coverage for any action brought directly

28  by Zoran against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS    - 19 -

1   a result, if these directors were to sue themselves or certain of the officers of Zoran, there would be

2   no directors' and officers' insurance protection and thus, this is a further reason why they will not

3   bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

4   insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

5         (h)      To bring this action for breaching their fiduciary duties, the members of the

6   Zoran Board would have been required to sue themselves and/or their fellow directors and allies in

7   the top ranks of the Company, who are their personal friends and with whom they have entangling

8   financial alliances, interests and dependencies, which they would not do.

9       57.     Plaintiff has not made any demand on shareholders of Zoran to institute this action

10   since such demand would be a futile and useless act for the following reasons:

11         (a)      Zoran is a publicly traded company with approximately 49 million shares

12   outstanding, and thousands of shareholders;

13         (b)      Making demand on such a number of shareholders would be impossible for

14   plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

15         (c)      Making demand on all shareholders would force plaintiff to incur huge

16   expenses, assuming all shareholders could be individually identified.

17                **THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT**

18                      **ON ZORAN'S FINANCIAL STATEMENTS**

**The FY 1997 Form 10-K**

19

20       58.     On or about March 31, 1998, the Company filed its FY 1997 Form 10-K with the

21   SEC. The FY 1997 Form 10-K was simultaneously distributed to shareholders and the public. The

22   FY 1997 Form 10-K included Zoran's FY 1997 financial statements which were materially false and

23   misleading and presented in violation of GAAP, due to improper accounting for the backdated stock

24   options. As a result, Zoran's compensation expense was understated and its net earnings were

25   overstated.

**The FY 1998 Form 10-K**

26

27       59.     On or about March 31, 1999, the Company filed its FY 1998 Form 10-K with the

28   SEC. The FY 1998 Form 10-K was simultaneously distributed to shareholders and the public. The

1  FY 1998 Form 10-K included Zoran's FY 1998 financial statements which were materially false and
2  misleading and presented in violation of GAAP, due to improper accounting for the backdated stock
3  options.  As a result, Zoran's compensation expense was understated and its net earnings were
4  overstated.

5  **The FY 1999 Form 10-K**

6      60.    On or about March 30, 2000, the Company filed its FY 1999 Form 10-K with the
7  SEC. The FY 1999 Form 10-K was simultaneously distributed to shareholders and the public.  The
8  FY 1999 Form 10-K included Zoran's FY 1999 financial statements which were materially false and
9  misleading and presented in violation of GAAP, due to its improper accounting for the backdated
10  stock options. As a result, Zoran's compensation expense was understated and its net earnings were
11  overstated.

12  **The FY 2000 Form 10-K**

13      61.    On or about April 2, 2001, the Company filed its FY 2000 Form 10-K with the SEC.
14  The FY 2000 Form 10-K was simultaneously distributed to shareholders and the public.  The FY
15  2000 Form 10-K included Zoran's FY 2000 financial statements which were materially false and
16  misleading and presented in violation of GAAP, due to its improper accounting for the backdated
17  stock options. As a result, Zoran's compensation expense was understated and its net earnings were
18  overstated.

19  **The FY 2001 Form 10-K**

20      62.    On or about April 1, 2002, the Company filed its FY 2001 Form 10-K with the SEC.
21  The FY 2001 Form 10-K was simultaneously distributed to shareholders and the public.  The FY
22  2001 Form 10-K included Zoran's FY 2001 financial statements which were materially false and
23  misleading and presented in violation of GAAP, due to its improper accounting for the backdated
24  stock options. As a result, Zoran's compensation expense was understated and its net earnings were
25  overstated.

26  **The FY 2002 Form 10-K**

27      63.    On or about March 31, 2003, the Company filed its FY 2002 Form 10-K with the
28  SEC. The FY 2002 Form 10-K was simultaneously distributed to shareholders and the public. The

1   FY 2002 Form 10-K included Zoran's FY 2002 financial statements which were materially false and

2   misleading and presented in violation of GAAP, due to improper accounting for the backdated stock

3   options. As a result, Zoran's compensation expense was understated and its net earnings were

4   overstated.

5         64.     The materially false and misleading FY 1998-FY 2002 Form 10-Ks described above

6   were reviewed, prepared and/or endorsed by the Director Defendants and signed by defendant

7   Schneider, the Company's CFO.

8                     **DEFENDANTS' SCHEME BEGINS TO UNRAVEL**

9         65.     The 1998-2005 Proxy Statements concealed Defendants' option backdating scheme.

10   Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on

11   proxy proposals between 1998 and 2005. In fact, it was not until the CFRA published a study on at-

12   risk companies for stock option backdating that shareholders learned that the Proxy Statements

13   which they had relied upon for nearly a decade were false and misleading. Defendants have been

14   unjustly enriched at the expense of Zoran, which has received and will receive less money from the

15   Defendants when they exercise their options at prices substantially lower than they would have if the

16   options had not been backdated.

17         66.     On May 16, 2006, Zoran's stock dropped as it was mentioned in the CFRA report on

18   companies at risk for being involved in the backdating scandal. Later, on May 23, 2006, in a

19   response to the allegations revealed by CFRA, Zoran announced that its Board of Directors was

20   forming a special committee comprised of outside advisors to investigate the Company's historical

21   stock option grant practices and related accounting.

22         67.     Each dollar diverted to Defendants via the option backdating scheme has come at the

23   expense of the Company. For example, if Gerzberg's 231,166 options granted in 1998 had not been

24   manipulated, but rather had a strike price of $7.50, instead of the $5.94 strike price he was granted,

25   when Gerzberg exercised those options the Company would receive $1.74 million instead of $1.38

26   million – a cost to the Company of $360,000 for this single instance of option backdating.

27

28

**THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT**

68.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions.  Given the many times Zoran's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

69.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Zoran, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

**TOLLING OF THE STATUTE OF LIMITATIONS**

70.     The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Zoran's public investors that Zoran's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

71.     Zoran's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until May 2006, when the CFRA published its report detailing the option practices of Zoran and other companies.

72.     Finally, as fiduciaries of Zoran and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Zoran's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Zoran Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### COUNT I

**Violations of §10(b) and Rule 10b-5 of the Exchange Act**
**Against All Defendants**

73.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.     Throughout the relevant period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct designed to divert hundreds of millions of dollars to Defendants via improper option grants.

75.     Defendants employed devices, schemes and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Zoran not misleading.

76.     Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein.  Through their positions of control and authority as officers of the Company, each of the Defendants was able to and did control the conduct complained of herein and the content of the public statements disseminated by Zoran.

77.     Defendants acted with scienter throughout the relevant period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.  Defendants were among the senior management of the Company, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports and filings with the SEC.

78.     Each of the Defendants participated in a scheme to defraud with the purpose and effect of defrauding Zoran.

1   79.    By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act, and

2   Rule 10b-5 promulgated thereunder.

3                                              **COUNT II**

4                          **Violations of §14(a) of the Exchange Act Against**
                                                **All Defendants**
5
    80.    Plaintiff incorporates by reference and realleges each and every allegation set forth
6
    above, as though fully set forth herein.
7
    81.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no
8
    proxy statement shall contain "any statement which, at the time and in the light of the circumstances
9
    under which it is made, is false or misleading with respect to any material fact, or which omits to
10
    state any material fact necessary in order to make the statements therein not false or misleading." 17
11
    C.F.R. §240.14a-9.
12
    82.    The 1998-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they
13
    omitted material facts, including the fact that Defendants were causing Zoran to engage in an option
14
    backdating scheme, a fact which Defendants were aware of and participated in from at least 1997.
15
    83.    In the exercise of reasonable care, Defendants should have known that the Proxy
16
    Statements were materially false and misleading.
17
    84.    The misrepresentations and omissions in the Proxy Statements were material to
18
    plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the
19
    accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as
20
    revelations of the truth would have immediately thwarted a continuation of shareholders'
21
    endorsement of the directors' positions, the executive officers' compensation and the Company's
22
    compensation policies.
23
    85.    The Company was damaged as a result of the material misrepresentations and
24
    omissions in the Proxy Statements.
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT III

### Violations of §20(a) of the Exchange Act Against All Defendants

86.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.    Defendants, by virtue of their positions with Zoran and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Zoran within the meaning of §20(a) of the Exchange Act. They had the power and influence and exercised the same to cause Zoran to engage in the illegal conduct and practices complained of herein.

## COUNT IV

### Accounting

88.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

89.    At all relevant times, Defendants, as directors and/or officers of Zoran, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

90.    In breach of their fiduciary duties owed to Zoran and its shareholders, the Defendants caused Zoran, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Zoran. By this wrongdoing, the Defendants breached their fiduciary duties owed to Zoran and its shareholders.

91.    The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

92.    As a result of Defendants' misconduct, Zoran has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

93.    Plaintiff demands an accounting be made of all stock options grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 26 -

1  Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other

2  exercise of backdated stock option grants received by the Defendants.

3  COUNT V

4  **Breach of Fiduciary Duty and/or Aiding and Abetting Against All Defendants**

5       94.    Plaintiff incorporates by reference and realleges each and every allegation set forth

6  above, as though fully set forth herein.

7       95.    Each of the Defendants agreed to and did participate with Gerzberg, Schneider and

8  Shenberg and the other Defendants and/or aided and abetted one another in a deliberate course of

9  action designed to divert corporate assets in breach fiduciary duties the Defendants owed to the

10  Company.

11      96.    The Defendants have violated fiduciary duties of care, loyalty, candor and

12  independence owed to Zoran and its public shareholders, have engaged in unlawful self-dealing and

13  have acted to put their personal interests and/or their colleagues' interests ahead of the interests of

14  Zoran and its shareholders.

15      97.    As demonstrated by the allegations above, Defendants failed to exercise the care

16  required, and breached their duties of loyalty, good faith, candor and independence owed to Zoran

17  and its public shareholders, and they failed to disclose material information and/or made material

18  misrepresentations to shareholders regarding Defendants' option backdating scheme.

19      98.    By reason of the foregoing acts, practices and course of conduct, the Defendants have

20  failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward

21  Zoran and its public shareholders.

22      99.    As a proximate result of Defendants' conduct, Zoran has been injured and is entitled

23  to damages.

24  **COUNT VI**

25  **Abuse of Control Against All Defendants**

26      100.   Plaintiff incorporates by reference and realleges each and every allegation set forth

27  above, as though fully set forth herein.

28

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS        - 27 -

1       101.    The Defendants employed the alleged scheme for the purpose of maintaining and

2  entrenching themselves in their positions of power, prestige and profit at, and control over, Zoran,

3  and to continue to receive the substantial benefits, salaries and emoluments associated with their

4  positions at Zoran.  As a part of this scheme, Defendants actively made and/or participated in the

5  making of or aided and abetted the making of, misrepresentations regarding Zoran.

6       102.    Defendants' conduct constituted an abuse of their ability to control and influence

7  Zoran.

8       103.    By reason of the foregoing, Zoran has been damaged.

9                             **COUNT VII**

10               **Gross Mismanagement Against All Defendants**

11       104.    Plaintiff incorporates by reference and realleges each and every allegation set forth

12  above, as though fully set forth herein.

13       105.    Defendants had a duty to Zoran and its shareholders to prudently supervise, manage

14  and control the operations, business and internal financial accounting and disclosure controls of

15  Zoran.

16       106.    Defendants, by their actions and by engaging in the wrongdoing described herein,

17  abandoned and abdicated their responsibilities and duties with regard to prudently managing the

18  businesses of Zoran in a manner consistent with the duties imposed upon them by law.  By

19  committing the misconduct alleged herein, Defendants breached their duties of due care, diligence

20  and candor in the management and administration of Zoran's affairs and in the use and preservation

21  of Zoran's assets.

22       107.    During the course of the discharge of their duties, Defendants knew or recklessly

23  disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants

24  caused Zoran to engage in the scheme complained of herein which they knew had an unreasonable

25  risk of damage to Zoran, thus breaching their duties to the Company.  As a result, Defendants

26  grossly mismanaged Zoran.

27       108.    By reason of the foregoing, Zoran has been damaged.

28

1

COUNT VIII

2

**Constructive Fraud Against All Defendants**

3       109.    Plaintiff incorporates by reference and realleges each and every allegation set forth

4  above, as though fully set forth herein.

5       110.    As corporate fiduciaries, Defendants owed to Zoran and its shareholders a duty of

6  candor and full accurate disclosure regarding the true state of Zoran's business and assets and their

7  conduct with regard thereto.

8       111.    As a result of the conduct complained of, Defendants made, or aided and abetted the

9  making of, numerous misrepresentations to and/or concealed material facts from Zoran's

10 shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of

11 Zoran. Thus they have committed constructive fraud and violated their duty of candor.

12      112.    By reason of the foregoing, Zoran has been damaged.

13

COUNT IX

14

**Corporate Waste Against All Defendants**

15      113.    Plaintiff incorporates by reference and realleges each and every allegation set forth

16 above, as though fully set forth herein.

17      114.    By failing to properly consider the interests of the Company and its public

18 shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

19 Defendants via the option backdating scheme, Defendants have caused Zoran to waste valuable

20 corporate assets.

21      115.    As a result of Defendants' corporate waste, they are liable to the Company.

22

COUNT X

23

**Unjust Enrichment Against All Defendants**

24      116.    Plaintiff incorporates by reference and realleges each and every allegation set forth

25 above, as though fully set forth herein.

26      117.    As a result of the conduct described above, Defendants will be and have been unjustly

27 enriched at the expense of Zoran, in the form of unjustified salaries, benefits, bonuses, stock option

28 grants and other emoluments of office.

1    118.    All the payments and benefits provided to the Defendants were at the expense of

2  Zoran.  The Company received no benefit from these payments.  Zoran was damaged by such

3  payments.

4    119.    Certain of the Defendants sold Zoran stock for a profit during the period of deception,

5  misusing confidential non-public corporate information.  These Defendants should be required to

6  disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Zoran.  A

7  constructive trust for the benefit of the Company should be imposed thereon.

8                                                    COUNT XI

9                          Against the Officer Defendants for Rescission

10    120.    Plaintiff incorporates by reference and realleges each and every allegation contained

11  above as though fully set forth herein.

12    121.    As a result of the acts alleged herein, the stock option contracts between the Officer

13  Defendants and Zoran entered into during the relevant period were obtained through Defendants'

14  fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus

15  invalid as they were not authorized in accordance with the terms of the publicly filed contracts

16  regarding the Officer Defendants' employment agreements and the Company's stock option plan

17  which was also approved by Zoran shareholders and filed with the SEC.

18    122.    All contracts which provide for stock option grants between the Officer Defendants

19  and Zoran and were entered into during the relevant period should, therefore, be rescinded, with all

20  sums paid under such contracts returned to the Company, and all such executory contracts cancelled

21  and declared void.

22                                                    COUNT XII

23                     Against the Insider Selling Defendants for Violation of
                             California Corporations Code §25402
24

25    123.    Plaintiff incorporates by reference and realleges each and every allegation set forth

    above, as though fully set forth herein.
26

27    124.    At the time that the Insider Selling Defendants sold their Zoran common stock as set

28  forth herein at ¶47, by reason of their high executive and/or directorial positions with Zoran, the

1   Insider Selling Defendants had access to highly material information regarding the Company,

2   including the information set forth herein regarding the true adverse facts of Zoran's improper

3   accounting.

4       125.   At the time of such sales, that information was not generally available to the public or

5   the securities markets. Had such information been generally available, it would have significantly

6   reduced the market price of Zoran shares at that time.

7       126.   The Insider Selling Defendants, and each of them, had actual knowledge of material,

8   adverse non-public information and thus sold their Zoran common stock in California in violation of

9   California Corporations Code §25402.

10      127.   Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants,

11  and each of them, are liable to Zoran for damages in an amount up to three times the difference

12  between the price at which Zoran common stock was sold by the Insider Selling Defendants, and

13  each of them, and the market value which Zoran common stock would have had at the time of the

14  sale if the information known to these defendants, and each of them, had been publicly disseminated

15  prior to that time and a reasonable time had elapsed for the market to absorb the information.

16                              COUNT XIII

17          **Against the Insider Selling Defendants for Breach of Fiduciary
            Duties for Insider Selling and Misappropriation of Information**

18

19      128.   Plaintiff incorporates by reference and realleges each and every allegation set forth

20  above, as though fully set forth herein.

21      129.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the

22  information described above, and sold Zoran common stock on the basis of such information.

23      130.   The information described above was proprietary non-public information concerning

24  the Company's financial condition and future business prospects. It was a proprietary asset

25  belonging to the Company, which the Insider Selling Defendants used for their own benefit when

26  they sold Zoran common stock.

27      131.   At the time of their stock sales, the Insider Selling Defendants knew that the

28  Company's revenues were materially overstated. The Insider Selling Defendants' sales of Zoran

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 31 -

1    common stock while in possession and control of this material adverse non-public information was a

2    breach of their fiduciary duties of loyalty and good faith.

3        132.    Since the use of the Company's proprietary information for their own gain constitutes

4    a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the

5    imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

6                                    **PRAYER FOR RELIEF**

7        WHEREFORE, plaintiff demands judgment as follows:

8        A.    Awarding money damages against all Defendants, jointly and severally, for all losses

9    and damages suffered as a result of the acts and transactions complained of herein, together with pre-

10   judgment interest, to ensure Defendants do not participate therein or benefit thereby;

11       B.    Directing all Defendants to account for all damages caused by them and all profits

12   and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

13   including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

14   imposing a constructive trust thereon;

15       C.    Directing Zoran to take all necessary actions to reform and improve its corporate

16   governance and internal control procedures to comply with applicable law, including, but not limited

17   to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or

18   Articles of Incorporation and taking such other action as may be necessary to place before

19   shareholders for a vote adoption of the following Corporate Governance Policies:

20           (i)    a proposal requiring that the office of CEO of Zoran and Chairman of

21   the Zoran Board of Directors be permanently held by separate individuals and that the Chairman of

22   the Zoran Board meets rigorous "independent" standards;

23           (ii)    a proposal to strengthen the Zoran Board's supervision of operations

24   and develop and implement procedures for greater shareholder input into the policies and guidelines

25   of the Board;

26           (iii)    appropriately test and then strengthen the internal audit and control

27   functions;

28           (iv)    rotate independent auditing firms every five years;

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 32 -

1          (v)      control and limit insider stock selling and the terms and timing of

2  stock option grants; and

3          (vi)      reform executive compensation.

4      D.      Ordering the imposition of a constructive trust over Defendants' stock options and

5  any proceeds derived therefrom;

6      D.      Awarding punitive damages;

7      E.      Awarding costs and disbursements of this action, including reasonable attorneys',

8  accountants', and experts' fees; and

9      F.      Granting such other and further relief as this Court may deem just and proper.

10                      **JURY DEMAND**

11      Plaintiff demands a trial by jury.

12  DATED: June 12, 2006          LERACH COUGHLIN STOIA GELLER

13                      RUDMAN & ROBBINS LLP
                    WILLIAM S. LERACH

14                      DARREN J. ROBBINS
                    TRAVIS E. DOWNS III

15

16

17                          WILLIAM S. LERACH

18                      655 West Broadway, Suite 1900
                    San Diego, CA  92101

19                      Telephone: 619/231-1058
                    619/231-7423 (fax)

20

21                      CAVANAGH & O'HARA
                    PATRICK O'HARA

22                      407 East Adams Street
                    Springfield, IL  62701

23                      Telephone: 217/544-1771
                    217/544-9894 (fax)

24                      Attorneys for Plaintiff

25  S:\CptDraft\Derivative\Cpt Zoran Derv.doc

26

27

28

1

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

2    Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3  named parties, there is no such interest to report.

4

5

6    ATTORNEY OF RECORD FOR PLAINTIFF
     NECA-IBEW PENSION FUND (THE DECATUR
7    PLAN)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>VERIFICATION</u>

2
I, WILLIAM S. LERACH, hereby declare as follows:

3
1.      I am a member of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins,

4
LLP, counsel for plaintiff in the above-entitled action.  I have read the foregoing complaint and

5
know the contents thereof.  I am informed and believe the matters therein are true and on that ground

6
allege that the matters stated therein are true.

7
2.      I make this Verification because plaintiff is absent from the County of San Diego

8
where I maintain my office.

9
Executed this 12th day of June, 2006 at San Diego, California.

10

11
WILLIAM S. LERACH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28